Opinion filed December 15, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed December 15, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00182-CR 

 

                                                    __________

 

                                     LORENZO WALKER, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 6417-D

 



 

                                                                   O
P I N I O N

 

Lorenzo Walker was convicted of tampering with
evidence by making a false document in a pending investigation.  Appellant asserts that the evidence is
legally and factually insufficient to support his conviction.  After reviewing all of the evidence
presented, we affirm.

Background Facts








On November 28, 2002, Rachel Thomas reported being
assaulted by her boyfriend, appellant. 
Later, Thomas recanted her allegation and left messages on Abilene
Police Department Sergeant Leo Joseph Tauer=s
answering machine denying the assault. 
While listening to the messages, Sergeant Tauer heard appellant in the
background telling Thomas what to say.

On December 6, 2002, appellant was arrested for
the assault.  Around the same date,
Sergeant Tauer began investigating appellant for evidence tampering.  During the investigation, Sergeant Tauer
listened to phone calls appellant placed from jail.  In one such phone conversation, appellant
told his sister that he needed his friend, Maurice Clayton, and his friend=s father, Ollie Clayton, to sign
affidavits stating that there was no assault and that Thomas tripped over a
chair.

In February 2003, two affidavits arrived in
appellant=s
mail:  one signed by Maurice and the
other by Ollie.  Both affidavits stated
that there was no assault.  They were
delivered to the jail by Pamela Janiece Walker, appellant=s niece, who also typed them.  Tonette Williams Walker, appellant=s nephew=s
wife, notarized the affidavits before Maurice and Ollie signed them.  Maurice and Ollie later admitted that,
despite what the affidavits said, they did not observe the incident between
appellant and Thomas and that they signed the affidavits without reading them.

As a result of Sergeant Tauer=s investigation, appellant was charged
with fabricating evidence.  Appellant was
tried before a jury and found guilty. 
Upon appellant=s
plea of true to the enhancement allegations, the trial court assessed
punishment at five years confinement. 
This appeal followed.  In two
points of error, appellant challenges the legal and factual sufficiency of his
conviction.

Legal & Factual Sufficiency

To determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000).








To determine if the evidence is factually
sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak that the verdict is clearly
wrong and manifestly unjust or whether the evidence contrary to the verdict is
so strong that the beyond-a-reasonable-doubt burden of proof could not have
been met. Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004);
Ross v. State, 133 S.W.3d 618 (Tex. Crim. App. 2004); Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002); Cain v. State, 958 S.W.2d 404
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App.
1996).  We review the fact- finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact-finder.  Cain, 958 S.W.2d at 407; Clewis,
922 S.W.2d at 135.  Due deference must be
given to the fact- finder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson v. State, 23
S.W.3d 1 (Tex. Crim. App. 2000).

To prove appellant guilty of the offense of
evidence tampering, the State was required to establish beyond a reasonable
doubt that appellant, knowing that an investigation was in progress, made,
presented, or used any record, document, or thing with knowledge of its falsity
and with the intent to affect the course or outcome of the investigation.  Tex.
Pen. Code Ann. '
37.09(a)(2) (Vernon 2003).

Appellant asserts that the State did not prove
that he knew the affidavits were false. 
We disagree.  Direct evidence of
culpability is not necessary to support a conviction; knowledge may be inferred
from the acts and circumstances surrounding a crime.  Hernandez v. State, 819 S.W.2d 806,
810 (Tex. Crim. App. 1991); Mares v. State, 903 S.W.2d 419, 421 (Tex.
App.CEastland 1995,
pet. ref=d).  

The acts and circumstances surrounding this case
could lead a rational jury to infer that appellant knew the affidavits were
false.  The foundation of the State=s case was a recorded phone
conversation between appellant and his sister during which appellant gave his
sister specific instructions to convince Maurice and Ollie to sign affidavits
pertaining to the assault.  The jury
heard appellant make the following statements:

I
need to write down what they need to say....Maurice has to say...we weren=t arguing ...they need to say...they
saw Rachel fall over the chair...they saw me pick her up.... The main thing is
they did not see me hit or assault her....Give it to Maurice...he can give it
to his dad....See if we can=t
get those charges dismissed since we got two witnesses willing to testify that
I didn=t hit or
assault Rachel....It would be good if someone came over today....Get in contact
with Maurice and that lawyer....Bring a pen and piece of paper with you or
whoever comes so that they can write down what I say.

 








These statements were not the only evidence of appellant=s culpability.  In addition, there was testimony presented
during trial that could have led a rational jury to infer that appellant knew
the affidavits were false.  The jury heard
testimony from Officer Scott Ferrell, the officer who first responded to Thomas=s domestic disturbance call.  Officer Ferrell testified that Maurice and
Ollie were not able to provide any information that was valuable to the
investigation.  From this testimony, a
rational jury could infer that Maurice and Ollie did not witness the incident;
that appellant knew this; and that, therefore, appellant knew that he was
obtaining Aeyewitness@ affidavits from two people who were
not even present.

The jury also heard testimony from Thomas who
testified that appellant hit her. 
Evidence that appellant assaulted Thomas supports the State=s theory because, if the jury believed
that Thomas was assaulted and that appellant was the perpetrator, then, by
definition, the affidavits were false and appellant would have obviously known
this.    

The jury further heard testimony from Sergeant
Tauer, the detective who investigated the assault and appellant=s subsequent efforts to tamper with the
evidence.  Sergeant Tauer testified that,
on a recorded phone message from Thomas, he had heard appellant directing
Thomas what to say.  The jury also heard
Thomas testify that appellant told her to tell the authorities that he did not
assault her.  From this testimony, a
rational jury could infer that appellant was pressuring Thomas to change her
story.  Although not directly related to
the affidavits at issue in this case, such an inference could lead the jury to
conclude that pressuring Thomas was part of a pattern of deceptive conduct on
the part of appellant, conduct that included convincing Maurice and Ollie to
sign the false affidavits.

Viewed in the light most favorable to the verdict,
we conclude that the record contains legally sufficient evidence that appellant
knew the affidavits were false.

We likewise conclude that the record contains
factually sufficient evidence that appellant knew the affidavits were
false.  Viewing the evidence in a neutral
light, it is not so weak that the verdict is clearly wrong and manifestly
unjust, and the contrary evidence is not so strong that the State=s burden of proof could not be
met.  








Because appellant did not call any witnesses to
testify, the only contrary evidence in the record comes from appellant=s cross-examination of the State=s witnesses, which we do not find to be
so strong as to prevent the State from meeting its burden.  Appellant did nothing more than attack the
credibility of the State=s
witnesses and the weight of the State=s
evidence.  Evaluating the credibility of
witnesses and the weight of the evidence is the role of the fact-finder, and
there is nothing in the record to suggest that the jury=s
evaluation was irrational.  Appellant=s two points of error are overruled

Conclusion

The evidence is legally and factually sufficient
to support appellant=s
conviction.  The judgment of the trial
court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

December 15, 2005

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.